23-2049. United States v. Reza. Counsel for appellant, if you'd make your appearance and proceed, please. Thank you, Your Honor. Brock Bench on behalf of Mr. A. Joe Reza. Ready. Thank you, Your Honor, ladies and justices, United States. The District Court found that the totality of the circumstances in this case supported probable cause. That determination rests on factors that shouldn't be given the weight that the court gave them. We're asking this court to review de novo the determination of that probable cause. The government's brief focuses extensively on the dangerousness and then less so on the collective knowledge that was imputed to Officer Rodriguez. But the District Court and the government can't explain how Rodriguez's actions on the supposedly reliable source of information were disregarded, is the word I would use, by Officer Rodriguez. Alabama v. White is the case that we've talked about, that anonymous tip is reliable under certain circumstances. That leads into my question. Was this an anonymous tip? I mean, the District Court found that it was not. The officers testified that they knew the person. And in your brief, you refer to it as anonymous tip, and you do now. It's not, is it? Your Honor, the government and the trial counsel here never, the trial counsel asked for the identity and was never provided it, and it was referred to, and Officer Sneeden and Detective Hededa referred that they knew this individual, but it didn't come out that who this individual was or the information supporting this individual. Is that really how the case law has dealt with the question of whether something's anonymous? You don't have to know, as defense counsel, who it is for it to be still known to the people receiving the information, right? In your Honor, what I would do is I would suggest that the type of information that is more important was in Alabama v. White, where they provided information that the defendant would be leaving an apartment at a specific time, in a specific vehicle, and going to a specific hotel with the cocaine. Those were outwardly verifiable items. Well, let me pause for just one quick second to put a bow on this point. The district court specifically found that it was not an anonymous tip. You're not suggesting that that was clear error, are you? Your Honor, I think that the district court found that Officer Sneeden said that he knew who this person was. That person was not identified, and to the extent that that's different than I disagree that the lack of identification doesn't make him anonymous. Am I making sense here? So you equate unidentified to the defendant with anonymous? Yes, Your Honor. Thank you. I appreciate that. But you haven't made a separate argument that the finding of the district court was clearly erroneous. Correct, Your Honor. I would agree with that. Yes, if that answers the court's question. It does. I think more important than the anonymous or the source of information or the court identifying the individual was the type of tips that were provided. Because going back to Illinois v. Gates, the veracity, reliability, and basis of the knowledge are highly relevant as to whether that tip can support probable cause or reasonable suspicion. Here, unlike Alabama v. White, the only predictive factor was that this white SUV with chrome rims was going to be driving on Lee Street. That, in Roswell, is essentially the town of Roswell. It's not Los Angeles where we're saying they were driving on a particular block, and as the district court noted, they were actually found a half mile from Lee Street on Texas, and then the stop goes down Fifth. The reliability. Officer Sneedon knew the identity of the tipster, going to the court's direct question, and considered that tipster's information significant, but he didn't take that to a magistrate and ask for a warrant. And we've briefed that and argued that, because the fact that neither he nor Detective Herrera, who had argued that that had resulted in a successful arrest, they didn't confirm it. And why would they have to? I mean, the Supreme Court has an exception to the warrant requirement, which is the automobile exception. And the exception is there whether you like it or not, whether I like it or not. So why would they have to do that? Because, Your Honor, I think that they are saying that we have this information, we believe this information, we found this information credible, but yet they didn't do what, if that information truly was believable or credible, would have been to take it to a magistrate and obtain a warrant. Well, that's one thing they could have done, but as the Chief Judge has just indicated, you don't have to do it under the law. I agree that they don't have to do it under the law, Your Honor. The fact is, though, that I think it leads to the calculus of whether or not that's a reasonable action on behalf of that officer. But that's not what we're asked to figure out here. The question is whether the facts that were known to them were enough to support a stop under these circumstances. And it isn't the subjective belief of a particular officer. It's a reasonable officer looking at all, the totality of the circumstances. And I would go back to the facts that Officer Rodriguez, being our reasonable officer, looking at those factors, had decided and was going to release Mr. Reza once he got the insurance and he ticketed him for the insurance and the registration. And so the support or the reasonable officer had information and believed he was going to proceed with that and effectuate an arrest or a search, I don't think is borne out by Officer Rodriguez's actions at the scene at the time of the events that say, no, I was going to ticket this individual and I was going to let him go. Well, part of your discussion with Judge McHugh focused on the question of subjective intent. And that flows through your brief. And why is it relevant at all what Officer Rodriguez thought, what he wanted to do, what he thought he was doing? Why? Why is that relevant under the Fourth Amendment? The question is, I think, as before us today, is was there an objective basis to believe that there was probable cause that there there was criminal contraband in that car? Isn't that the question? The only question? It is, Your Honor. I would submit that the information does not support that. The only unlike Alabama, the only verifiable information here is that there was a white SUV with rims. The rest of it that this SUV had fentanyl was not observable or wasn't the type of information that would be known or acted on. The tip was that he was going to be in the area that had been the day prior. That wasn't for this day. This is an individual who lives in Carlsbad. And just the fact that he's out and about would suggest that that tip is information. But that wasn't verifiable. The two sources had relayed the fentanyl was possessed in three months prior. That's just vague information as opposed to the type of information that Illinois v. Gates or Alabama had where this individual is leaving in this car at this time in this place that are in that are verifiable, outwardly demonstrable type of information that can be corroborated. Let me let me ask you and remind me. I mean, in those cases, my recollection is that, well, I don't know. Remind me, did the officers in those cases that you just alluded to, did they know the person that they were going to stop, that they were going to stop? I believe they knew the individual. They knew they were going to stop, but not the anonymous. Okay, well, in this instance, just what do we do with the fact? This is a small town in New Mexico. What do we do with the fact that the officers knew him, knew his record, knew he was engaged in narcotics, knew he was engaged in that kind of narcotics, and had reason to believe that he was doing exactly what the source of information said that he was doing? In terms of, doesn't corroboration play a role in this, and isn't that a form of corroboration? Your Honor, I think the court has, and hopefully has made my point, which is that because it's a small town, because this is information that Officer Schneem knew, because he knew Reza, if he had put any objective, reasonable belief in those facts as he articulates and testifies them, then that would have been information that he would have taken to a magistrate. And you're taking us right back to where we were before. Whether it would have been best practices or optimal to go to a magistrate has nothing to do with whether we're going to determine what was legal or illegal, not what was the best practice for the officer. And if it was not illegal for those officers to act on that information they had, including their information, a history of information about the defendant, about what he did, about his, I mean, narcotics activity as they understood it, if it was not illegal for them to act, then you don't win, right? Correct, Your Honor. I agree with the court there. But the issue here is that we're taking these, what I would term very minor factors, that U.S. v. Leon is a case that I cited in my reply brief, where the court went through the factors of the drug hub, the driving plans, inconsistent statement, the messy car, the nervousness, and that's much, those are the factors that we see here. We have much more nebulous factors that, and in Leon the court said that the factors must eliminate innocent travel and reliance on the mantra of totality can't make those factors here, just the SOI, the credibility, the articulation of the two months prior, can't make those into probable cause. Two months prior, it's a day prior, the source that was known to police officers saw the defendant with fentanyl in this car the prior day. Correct. Correct, Your Honor. The two months prior was that he'd been seen, two sources related in the past three months that he'd been in. They had gotten tips on their tip line and another informant had called and told them, so they had corroboration to what the identified informant told them on this occasion. That's what they testified to, Your Honor, yes. Well, you're not challenging that testimony, are you? I'm challenging the weight that should be given to those factors, and those are similar to driving towards a high crime area. Innocent travel, there's a Rumbler device that's designed and was activated twice by Officer Rodriguez that they testify is designed to gain the attention of inattentive drivers, not illegal conduct. It's not a spike strip or something that you throw down that's created for criminal conduct. It's inattentive drivers. Well, to go to the Rumbler device, I think that was raised in connection with they're trying to get him to stop. And what do we do, and the government, I think, alluded to this in his brief, as a factor supporting probable cause, what do we do with the fact that he didn't stop when he was initially followed by, when law enforcement was initially following him and had to use the Rumbler device twice before he stopped? Like, I don't know what it was, 25, well, there was a period of time where he did not stop. What do we do with that in terms of whether that supports probable cause? I mean, as the government asserts it, it does. Your Honor, I think we looked at Leon, and that's just one of those factors where an individual who's pulling over chose not to pull over at what was described as dirt spots on the side of the road, but pulled into an apartment complex. And, Your Honor, respectfully, I would ask to, if that's answered the court's question, to reserve the last two and a half minutes. Please. Thank you. I would first like to remind the court of the standard of review here. And, Judge McHugh, you hit the nail on the head. He is not challenging the facts, just the weight to be given to each one of those. The credibility of witnesses, weight to be given the evidence and reasonable inference drawn from that evidence, all are determinations that fall within the province of the district court. And they made these determinations. And, in fact, one of the determinations they specifically made was that the SOI, the source of information here, was, and this is the court's words on page 11 of that order, adequately reliable and credible. That's something that they specifically found. And the government's contention here, respectfully, Your Honors, is that the district court got it exactly right. Shortly after Carlsbad, New Mexico, police department officer Israel Rodriguez pulled the defendant over in that white Nissan SUV with large chrome rims. He had probable cause to search the defendant's car for contraband, specific contraband, that being the guns and that being the fentanyl pills that were the subject of the informant's tip the day prior. And he was authorized to conduct this search under the automobile exception to the probable cause search warrant requirement. Doesn't matter, and I think, Your Honor, hit the nail on the head, a lot of things don't matter. This officer's subjective intent, Officer Rodriguez's subjective intent perhaps to release the defendant after the stop if he could have provided insurance. The fact that it might have been a pretextual stop, the length of the stop. Why didn't he ultimately, why didn't anybody get a warrant? None of that stuff matters because we are looking at the objective facts and whether the objective facts justify execution of the crime. The outer bounds when probable cause can be found is one minute into that lawful traffic stop. So we have what is a lawful traffic stop by virtue of those expired tags. The defendant is pulled over, and I didn't choose one minute arbitrarily. One minute is when the officer receives that driver's license, figures out that Eddie Joe Reza, the defendant, is far from home, is nowhere near his home, and presumably has no good reason to be in this high crime area, and when the officer sees a corroboration of the informant's tip that Eddie Joe Reza is in fact alone. So that's really when probable cause materializes. Okay. Help me with this then. And that's helpful because, so you're not saying that at the time they stopped him, they had probable cause? I'm not saying that they didn't. I think they certainly Give me the double negatives. Let's rephrase that then. When did they have probable cause in your view? What was the earliest point? You spoke about the one minute, and the one minute implies that they had to see something that happened, in other words, that took place when they stopped him, that would support probable cause. I didn't think that was your position, so I need to be clear. When, what is the earliest point that there was probable cause stated affirmatively? Affirmatively, it would be when Eddie Joe Reza pulled halfway into that handicapped parking spot in the Colonial Hillcrest apartment complex. That's when probable cause existed. You see, Officer Rodriguez was entitled to make that stop. It was a lawful stop. So you did not have probable cause based upon the Crimestoppers reports and based upon the anonymous, the confidential source. There was no probable cause at that point? That wasn't my contention in the briefs, and the contention here today is that a lot of these factors add up and accumulate. It is not a divide and conquer strategy, and none of these factors simply stand in isolation. They all pair together to amount to probable cause. I get that, but I want to know when that probable cause attached. Okay, so it's not the confidential, at least your position was, it's not the confidential source, it's not the information. Once they had the SOI information, once collectively the officers had that, now I understand, well, at least I didn't understand your position in your brief, but you're telling me now that even that wasn't enough. It had to be, something else had to happen before you actually had probable cause to search the vehicle. I think that's a fair position. So we have the informant's tip, not based on stale information, based on information that was gleaned by the informant, who is not anonymous, who is known to both Detective Herrera and Sergeant Sneathan. The informant's information was gleaned the previous night, so we have the information gleaned from the source of information. We have the fact that the source of information is trusted by the police department. I think the identity being known by Detective Herrera and Sergeant Sneathan, but I think Detective Herrera specifically said he was reliable and he was trustworthy in the past, if you recall. He provided information that led to the arrest of another felon in possession the previous month in June of 2020. And that's all true, but I think you just said that even with all that, in your view, there wasn't probable cause until they saw his car, well, until his car stopped. Until his car was pulled over, that's what I understood you to say, in the parking lot, which baked into that would be the delay between the time that the officers used the rumbler device and he pulled over. As I understood you, that was the earliest point. Now, to be clear here, what that negates is the position that once you had the SOI and everything else, you had probable cause. Then the question was, do I just see him and have a reason to pull him over? Those, at least, are two pretty stark differences. And I'm not saying they result in a different outcome, but I'm just saying I want to be clear what your position is. Your position, as I understood it today, is even with the SOI, even with the confidential, even with the crime stoppers, you did not have probable cause until they saw him, until he drove in front of the officers and then stopped. Your Honor, I think that's correct. Okay. I think you have the tips, and the tips are the road to probable cause. They're certainly putting us on the right path. It's Officer Rodriguez's ultimate observations that night at 11 p.m. that put us over the goal line. And so, Officer Rodriguez, what he knows is the defendant's been flagged as armed and dangerous by the Carlsbad Police Department. He was a gang member, convicted felon. He has been in a shootout with police, and he has possessed guns and drugs. And now, when he sees him, when Officer Rodriguez sees the defendant pass by him in that vehicle, we are in the final stage of developing probable cause for that evening. He is driving, he, the defendant, is driving that exact same car described by the tipster in Carlsbad, New Mexico, that white Nissan SUV with large chrome rims. He's driving late at night, and he's driving in a high-crime area of Carlsbad. I think Officer Rodriguez said it was known for homicides, shootouts, burglaries, foot pursuits, and he personally knew about arrest warrants being effectuated there. He was driving, and it's a point worth mentioning, a half-mile from Lee Street. Lee Street, I believe, runs east-west, and he was a half-mile, several blocks was the term used, several blocks away from the area the original tipster mentioned he would be. And so corroboration is coming left and right, and it's all materializing in the officer's head. And the defendant's driving, as we said, is serving to raise alert levels, and that's a quote from Officer Rodriguez's testimony. They are the only cars on the road, and despite that... And by driving, what are you talking about now? Are you talking about the fact that he didn't stop, or are you talking about something else? I'm talking about the lack of stopping, Your Honor. I'm not attributing some sort of traffic infraction, like speeding or anything like that. Okay. Counsel, before you move on, can I ask you, just in response to the Chief's questions, does it matter the earliest that probable cause... What accrued into your argument? In the sense that, don't you just have to show that you had probable cause when you searched, or are you looking at a different point in time that you had to have probable cause? No. I don't know, and it's tough to say when probable cause actually materialized. It's a tough question to answer when push comes to shove in saying, well, did you have probable cause after the tip? What about when... My question's a little different. When do you have to have probable cause? Well, certainly prior to the effectuation of any search or something like that, and I certainly think probable cause is in place either at the moment of the stop, when he pulls into that handicapped spot, or right after that stop, when he sees the driver's license, sees that he's far from home, and sees that he's in this high-crime area at So certainly before the search is what you're saying? That is correct. Thank you. Yes, yes, Your Honor. And as I was saying, the driving, I characterized as bad driving, but it is suspicious driving. How about that? Raised the officer's alert levels. They're the only cars on the road, and despite that, he is still, the defendant is still not pulling over, despite his unobstructed view of the officer's car. He passed areas he could have passed, and it is correct, Judge Holmes, that he had to use the rumbler air horn, that ground-shaking device, twice. There was the suspicious activity of rolling down his passenger window for really no rhyme or reason, and then parking halfway in the parking spot. All of that in its totality, that's what I'm asserting amounts to the probable cause necessary to invoke the automobile exception. And I can finish with this if there are no additional questions. I think the judges were exactly right. The objective facts matter. The inquiry here is an objective one. And here, these objective facts created probable cause and justified the search. The initial stop was justified because the defendant had expired registration. I think the defendant concedes this. And the subsequent search was valid because it was supported by probable cause, that being the automobile exception. And if Your Honor has no more questions, I concede the rest of my time. No. Thank you, Counsel. Thank you. I appreciate your time. In response to the court's question, the government stated that there was no good reason to be this far from home when asked a minute into the stop, and they seized the driver's license and the address. We're back in Carlsbad. It's not a large town. But the issue here is that this goes straight at Santos and Sandoval that talk about criminal history, and that people with criminal histories, essentially under the way the government has presented its case, I think are roving targets for warrantless arrest. There's not. I think the difficulty that the government has articulating when and how it had probable cause takes me directly back to Officer Sneed and Deputy Herrera's determination, their subjective, I'm getting sidetracked again, subjective determination of the credibility, but objectively looking at that. Those are the type of things that, objectively looking at it, a minute into the stop, if the PC is going to arise from a bad parking determination, I don't think that gets us there. And that brings me to the Montes Ramos case that I had in the reply brief, where the deputy on a county road in New Mexico sees an individual who he lists and articulates a whole bunch of factors, sticks his nose simply just inside the window to verify that what he believes is going to be marijuana smells like marijuana, and this court reversed it because the deputy's minimal intrusion in that case was sufficient for reversal. And that's, I think, where we're at here, is that the probable cause is not objectively there with the source of information and the tipsters. Those are just nebulous factors that were floating out there that are being proffered for the idea that this is something that should be done, but they're not. You don't question the stop, right? Correct. I have no impression. Okay, so they had a right to stop and they had a right to go through the drill associated with the violation, the traffic violation. Correct, Your Honor. Okay. And as we come back to that, that's where I keep coming back to, and I think the question was whether an objective officer, and using Officer Rodriguez as that objective officer who performs a lawful traffic stop, just says that had I been given this information, I was going to let him go. This is an individual who, I think it's on page 11 of the brief, talks about he knew the facts that he was going to be, he had criminal history, he was going to be there, he had the source of information from that briefing. Those are all items that were known to him, and so when we get into the objective determination, I don't think that it's there, Your Honor. Thank you, Counsel. Excuse me, Your Honor. Yes. Thank you.